OPINION. Black, Judge: Petitioner’s assignments of error do not identify very clearly what statutory grounds it relies upon for relief under section 722 of the Code. However, we have set out in our preliminary statement the two issues we deemed to have been raised by the petition in its assignments of error as grounds for relief under section 722. Evidently petitioner is relying upon grounds which it alleges fall within the provisions of section 722 (b) (4) of the Internal Revenue Code.[1] Issue 1 — 0ommitment to the Rental of a New and Improved Warehouse. The evidence shows that in 1940, Standard Candy Company which had been petitioner’s landlord of certain property for several years erected a new and much more commodious warehouse for petitioner than it had been using in prior years. The testimony also establishes that this new warehouse which was situated on the railroad tracks added very substantially to the efficiency of petitioner’s operations and increased its earnings. Petitioner contends that Standard was committed to the erection of this warehouse prior to January 1, 1940, and that petitioner was committed prior to that date to rent it from Standard. If the facts substantiated this contention, then petitioner might well have ground for relief under section 722 (b) (4), I. E. C., the commitment provisions of section 722 (b) (4) assuming, of course, that other requirements of the statute are met. The proof, however, does not sustain petitioner as to this alleged commitment prior to January 1, 1940. H. L. Eay, secretary of Standard testified at the hearing as a witness for the petitioner. During the course of his testimony the following question and answer Occur: By Mr. Jackson: [Attorney for petitioner] Q. Mr. Ray, see if I am right. Did you say that several years before this building was built that the Standard Candy Company had agreed to build a building when they wanted it? Is that what you said? A. No, we had not agreed to build any building. We had talked with Mr. Strother, or he with us several years about building a building, but we never did get together on it until the beginning of 1940. Other testimony in the record is to the same effect. The upshot of this testimony is that petitioner and Standard had discussed the building of this warehouse for petitioner prior to January 1,1940, but no agreement or definite commitment had been reached. It was in 1940 that the parties reached a definite agreement as to the erection of this warehouse for lease to petitioner. After the agreement was reached in 1940, Standard went ahead and erected the building and the lease of the building to petitioner was signed November 16, 1940. Petitioner began to occupy the building on or about February 15, 1941. Under these facts and circumstances, we hold that petitioner has not proved a commitment within the meaning of the language used in section 722 (b) (4) wherein it says: * * * Amy change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business, * * * It follows that petitioner is not entitled to any relief upon this ground. Issue 2 — Change in Method of Transportation. The facts show that during the base period years prior to 1939 petitioner had used its own trucks to haul produce from places where it had been purchased. In 1939, a policy was adopted by the directors of petitioner to seek other mediums of transportation and to eliminate long hauls of produce by petitioner’s own trucks. To implement this change in policy, petitioner entered into a sales contract with Central Transportation Company whereby petitioner sold to Central Transportation Company its long-haul trucks and there was embodied in the contract the proviso that Central Transportation Company agreed to haul all wares of petitioner from such points as desired. This contract was signed September 16,1939. The change did not result in increased earnings for petitioner as it had expected but, on the contrary, had the reverse effect and in the following year another change was made which is described in our Findings of Fact. Apparently this second change in methods of transportation which took place in 1940 did result in increased earnings to petitioner but it took place in 1940 and is, therefore, not a ground for relief under section 722 (b) (4), no commitment to this course of action having been shown prior to January 1,1940. In view of the fact that the facts show that the change in methods of transportation which the petitioner made in 1939 did not result in increased earnings but, on the contrary, resulted in a lower level of earnings, it would not be a qualifying factor for relief under section 722 (b) (4). The Bureau of Internal Revenue Bulletin contains the following discussion of the requirements for recognizing a change in character of business due to a change in operation or management so as to qualify a taxpayer for relief under section 722 (b) (4) : (1) A CHANGE IN THE OPERATION OR MANAGEMENT OE THE BUSINESS To be entitled to relief because of a change in the operation or management of the business, a taxpayer must demonstrate that the change is substantial as measured by two basic tests: (i) The nature of the operations must be essentially different after the change from the nature of the operations prior to the change; and (ii) There must be a higher level of earnings which-is directly attributable to the change. See, Bulletin on Sectitín 722, page 48. Even if we assume that the change in transportation methods which petitioner put into effect in 1939 qualifies as a change under (i) above, it clearly does not qualify under (ii) above. We hold that under the facts and circumstances which attended and followed petitioner’s change in transportation operations in 1939, such change does not qualify petitioner for relief under section 722 (b) (4). Petitioner has failed to establish that it is entitled to any relief under section 722 of the Internal Revenue Code with respect to the years 1943 and 1944. Reviewed by the Special Division. Decision will he entered for the respondent. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. ******* (b) Taxpayers using Average Earnings Method. — Tbe tax computed under this sub-chapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because— ******* (4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purpose of this subparagraph, the term- “change in the character of the business” includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, or